[Cite as *Farnsworth v. Burkhart*, 2014-Ohio-4184.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| VIRGIL FARNSWORTH, et al., | ) | |
| | ) | CASE NO.   13 MO 14 |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JAMES BURKHART, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 2012-133.


JUDGMENT:                        Reversed.


APPEARANCES:
For Plaintiffs-Appellees:         Attorney James Huggins
                                  Attorney Daniel Corcoran
                                  Attorney Kristopher Justice
                                  424 Second Street
                                  Marietta, Ohio  45750


For Defendants-Appellants:        Attorney Mark Stubbins
                                  59 North Fourth Street
                                  P.O. Box 0488
                                  Zanesville, Ohio  43702-0488


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                  Dated:  September 22, 2014

VUKOVICH, J.

**{¶1}** The mineral holders appeal the decision of the Monroe County Common Pleas Court which ruled that they abandoned their mineral interest in the surface owners' property. In their first assignment of error, the mineral holders argue that the trial court erred in finding they abandoned their mineral interests under the 1989 Dormant Mineral Act because: (1) that version no longer applies, (2) the twenty-year look-back period is fixed rather than rolling; (3) reference to the original reservation in a later surface transfer is a savings event; and (4) the 1989 version is an unconstitutional taking of property without notice.

**{¶2}** Following the various prior holdings of this court we conclude: (1) under the holding in *Walker*, the 1989 DMA can still be applied; (2) under the holding in *Eisenbarth*, the look-back period is fixed, not rolling; (3) under the holding in *Dodd*, the reference to a prior mineral severance in a surface transfer deed is not a savings event; and (4) under the holding in *Walker*, arguments on the constitutionality of the 1989 DMA are waived where not raised below. The second conclusion is dispositive here as the minerals were originally severed within the fixed look-back period. There was thus no abandonment under the 1989 DMA.

**{¶3}** In their second assignment of error, the mineral holders argue that the trial court erred in alternatively holding that they abandoned their mineral interests under the 2006 DMA as well. This court's *Dodd* decision ruled that the mineral holders' timely claim to preserve after notice of abandonment prevented abandonment under the 2006 DMA if the 1989 DMA does not apply. Accordingly, the judgment of the trial court is reversed, and judgment is entered that the mineral holders retain their mineral interests in the subject property.

STATEMENT OF THE CASE

**{¶4}** In 1980, a deed was signed and recorded whereby Veronica Burkhart conveyed 104 acres in Monroe County to the Belcastros. She reserved for herself and her heirs and assigns all minerals under the premises along with the right to enter and explore for same (and conveyed the right to free gas to the grantees). In 1988, the Belcastros deeded the property to Virgil and Theresa Farnsworth,

repeating the mineral reservation to the former grantor (and referencing the volume and page number of the prior deed).

{¶5} When Veronica Burkhart died, her mineral rights were inherited by seven heirs: James, Dale, Ellis, Mark, Francis, and Glen Burkhart and Judy Gallagher. Although Veronica died in 1995, the heirs did not apply for a certificate of transfer until February 6, 2012. The Monroe County Probate Court issued the certificate of transfer on February 24, 2012. It was recorded in the Monroe County Recorder's Office on February 27, 2012.

{¶6} In the meantime, on February 22, 2012, the Farnsworths generated a notice of abandonment (the first step in proceeding under the 2006 DMA), sending notice to the seven mineral holders by certified mail, return receipt requested. This notice of abandonment was served on the named holders as follows: February 24 (James, Ellis, and Francis), February 25 (Mark and Glen {signed for by his surviving spouse as he died in 1996}), February 27 (Dale), and March 1 (Judy).

{¶7} On April 19, 2012, these holders recorded a timely claim to preserve their mineral interests under the 2006 DMA. On April 23, 2012, the Farnsworths recorded an affidavit of abandonment. The Farnsworths then filed a complaint seeking quiet title to the minerals upon a declaration that the Burkhart heirs abandoned their mineral interests under both the 1989 and the 2006 DMA. Motions for summary judgment motions were filed, and on July 16, 2013, the trial court granted summary judgment in favor of the Farnsworths.

{¶8} The trial court stated that the former Dormant Mineral Act was self-executing and could still be utilized for abandonment claims. The court then applied a rolling look-back period and ascertained that there were no savings events from June 30, 1986 to June 30, 2006 (described as the last day the former DMA was in effect). In so holding, the trial court stated that the 1988 deed transferring the surface was not a savings event because it merely repeated the former grantor's prior mineral reservation. The court concluded that the mineral interest was abandoned and reunited with the surface under the 1989 DMA.

{¶9} In the alternative, the trial court concluded that there was also an abandonment under the 2006 DMA as the holders did not show a savings event in the twenty years preceding the date of the 2012 notice of abandonment. The court found that any transfer in the probate court was not a savings event until it was recorded in the recorder's officer (and that this did not occur until after the notice of abandonment was first served). The court also held that the mineral holders' claim to preserve was not a savings event but merely served to halt the statutory process of abandonment and to require a lawsuit where the holder must show a savings event.

{¶10} The Burkharts filed a timely notice of appeal. They set forth two assignments of error: one addresses the trial court's application of the 1989 DMA, and one addresses the trial court's application of the 2006 DMA.

ASSIGNMENT OF ERROR NUMBER ONE: 1989 DMA

{¶11} Pursuant to the 1989 version of the Dormant Mineral Act, a mineral interest held by a person other than the surface owner of the land subject to the interest "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred "within the preceding twenty years." Former R.C. 5301.56(B)(1)(c) (unless the mineral interest is (a) in coal or (b) held by the government).

{¶12} The six savings events are as follows: (i) the mineral interest has been the subject of a title transaction that has been filed or recorded in the recorder's office, (ii) there has been actual production or withdrawal by the holder, (iii) the holder used the mineral interest for underground gas storage; (iv) a mining permit has been issued to the holder; (v) a claim to preserve the mineral interest has been filed; or (vi) a separately listed tax parcel number has been created. Former R.C. 5301.56(B)(1)(c)(i)-(vi). Only the first savings event is at issue here.

{¶13} The effective date of this statute was March 22, 1989. Division (B)(2) provides that a mineral interest shall not be deemed abandoned on the grounds that none of the circumstances in (B)(1) apply until three years from the effective date of the statute. Another section provides that a mineral interest may be preserved indefinitely from being abandoned by the occurrence of any the savings events in

(B)(1)(c), including, but not limited to, successive filings of claims to preserve. Former R.C. 5301.56(D)(1).

{¶14} The Burkharts' first assignment of error sets forth four distinct issues related to the trial court's application of the 1989 DMA, which will each be addressed separately. This assignment of error provides:

{¶15} "The Trial Court erred in applying the 1989 version of the Dormant Mineral Act causing automatic abandonment of Appellants' mineral interest when: (1) at the time of filing the lawsuit the current version of Ohio Revised Code §5301.56 was in effect preventing application of the former statute, (2) application of 1989 Act did not create a 'rolling' 20 year look back period, (3) reference to the mineral exception preserved Appellants' interest and/or (4) the taking of Appellants' mineral interest via an automatic abandonment without notice constitutes an unconstitutional taking of property."

APPLICABILITY OF FORMER DMA

{¶16} The appellant mineral holders note that the 2006 enactment provided that the prior version was repealed and the reenactment added, among other things, that the notice of abandonment commences the twenty-year look-back period. They contend that the law in effect at the time the complaint was filed is controlling and thus only the 2006 DMA can be applied, urging that the 1989 DMA no longer exists. The mineral holders cite *LaSalle*, which held that the applicable version of an expungement statute is that which is in effect at the time the application to expunge was filed. *See State v. LaSalle*, 96 Ohio St.3d 178, 772 N.E.2d 1172 (2002) (disposing of argument that applicable version was the new one that went into effect after the expungement application was filed but before trial court ruled).

{¶17} The surface owners respond that *LaSalle* is not on point here. They assert that the 1989 DMA was self-executing as the mineral rights vest in the surface owner automatically by operation of law upon the non-occurrence of a savings event in the pertinent look-back period. They cite to the United States Supreme Court case dealing with Indiana's DMA, wherein the Court recognized that the mineral rights

automatically lapsed and reverted to the surface owner. *Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

{¶18} The surface owners also cite R.C. 1.58(A), which provides that reenactment does not affect the prior operation of a statute or affect a right acquired or accrued under the prior version. They conclude that unless the 2006 DMA expressly stated that the 1989 version was no longer applicable, the change in law did not erase the former DMA (adding that if the legislature had included such language, it would have been an unconstitutional taking of a vested right).

{¶19} This court has ruled that the 1989 DMA can still be used after the 2006 amendments because the prior statute was self-executing and the lapsed right automatically vested back to the surface owner. *Walker v. Shondrick-Nau*, 7th Dist. No. 13NO402, 2014-Ohio-1499 (fka *Walker v. Noon*). *See also Swartz v. Householder,* 7th Dist. Nos. 13JE24, 13JE25, 2014-Ohio-2359. The reasoning from those cases is reiterated here.

{¶20} As set forth above, the 1989 DMA provides that a mineral interest "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the look-back period. Former R.C. 5301.56(B)(1)(c). And, a mineral interest shall not be "deemed abandoned" under division (B)(1) due to the lack of savings events until three years from the effective date of the act. Former R.C. 5301.56(B)(2).

{¶21} By way of comparison, the 2006 DMA provides that the mineral interest will not become vested until the surface owner serves or publishes (if applicable) the notice of abandonment on each holder and then, at least thirty but not more than sixty days thereafter, records an affidavit of abandonment. R.C. 5301.56(E)(1)-(2). The 2006 DMA further provides that if the mineral holder fails to timely respond under the statute, the surface owner shall cause memorialization of the abandonment to be recorded by the county recorder at which time, "the mineral interest shall vest in the owner of the surface * * *" R.C. 5301.56(H)(2).

{¶22} The United States Supreme Court has stated that Indiana's DMA was self-executing as it provided that the mineral interest shall be extinguished and the

ownership shall revert to the surface upon the non-occurrence of savings events within the pertinent time period. *Texaco*, 454 U.S. 516. The Court also stated that no individual notice was required before abandonment and no opportunity to cure must be provided as the statute with a two-year grace period provided notice. *Id.* (the only other required notice involved an opportunity to prove a savings events, not to avoid any prior automatic abandonment).

{¶23} In *Walker*, we pointed to R.C. 1.48 and 1.58. Pursuant to R.C. 1.58, the amendment or repeal of a statute does not affect the prior operation of the state or affect "any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder." A vested interest is a property right that can be created by statute; it so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent. *State ex rel. Jordan v. Industrial Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9.

{¶24} In rejecting a Carroll County trial court's statement in *Dahlgren v. Brown Farm Properties,* that any right acquired under the 1989 DMA was merely "inchoate," this court pointed out that the terms "inchoate" and "vested" are considered opposites. *Walker*, 7th Dist. No. 13NO402 at ¶ 43. An inchoate right is a right that *has not fully* developed, matured, *or vested*. Black's Law Dictionary (9th Ed.2009) (online). *See also Bauman v. Hogue*, 160 Ohio St. 296, 301, 116 N.E.2d 439 (1953).

{¶25} In addition, a statute is considered prospective in its application unless expressly made retrospective. R.C. 1.48. Without such express language eliminating the rights under the old act, the amendments did not affect causes already existing. *See Bartol v. Eckert*, 50 Ohio St.3d, 33 N.E. 294 (1893) (and if there is an expression of intent, the statute will be constitutional only if it affects merely remedial, not substantive, rights). *See also Cadles of Grassy Meadows, II, LLC v. Kistner*, 6th Dist. No. L-09-1267, 2010-Ohio-2251 (new statute of limitations did not apply to judgments that became dormant prior to enactment as no clear expression of retroactive application, i.e. new statute enacted before revival action was filed does not apply).

**{¶26}** We also explained that the 2006 look-back did not expressly or even implicitly make a statute retroactive. *Swartz,* 7th Dist. Nos. 13JE24, 13JE25, at fn. 2. A look-back period was also a feature of the 1989 DMA. Under the 2006 DMA, the notice of abandonment is the new trigger for the look-back, which item can only apply prospectively because one could not file a notice of abandonment with the 2006 DMA statutory effects and triggers before it was even created. In other words, the new DMA instituted *a new look-back initiator* (the notice of abandonment) to be employed prospectively in the future. *Id.*

**{¶27}** As aforementioned, the 2006 DMA specifically deals with rights that have not yet been deemed abandoned and vested. *See* R.C. 5301.56(E) ("Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface subject to the interest shall do both of the following * * *"). It thus eliminated automatic vesting after June 30, 2006 (imposing new enforcement obligations on the surface owner and redrawing the savings event timeline).

**{¶28}** But, this does not mean that it erased interests that were previously deemed vested (merely because a suit had not yet been filed to formalize the reverter). *See Swartz,* 7th Dist. Nos. 13JE24, 13JE25 at ¶ 35. The most pertinent definition of the word "deem" here would be: "to treat [a thing] as being something that it is not, or as possessing certain qualities that it does not possess. It is a formal word often used in legislation to create legal fictions * * *." Garner, *The Dictionary of Modern Legal Usage*, 254 (2d Ed.1995).

**{¶29}** This court explained that the 2006 DMA contains no language eliminating property rights that were previously expressly said to be vested, i.e. it contains no statement that the new requirements for surface owners and the new rights for mineral holders apply retrospectively. *See Swartz,* 7th Dist. Nos. 13JE24, 13JE25 at ¶ 34, citing *Walker,* 7th Dist. No. 13NO402 at ¶ 51. It was decided that absent express language eliminating the prior automatic abandonment and vesting of rights under the 1989 DMA, the amendments do not affect causes already existing (regardless of whether a suit is filed before or after the amendments). *See id.* We

concluded that it would be contrary to the plain language of the statute to hold that the surface owner's right to the abandoned mineral interests are inchoate even though the statute expressly stated that the right vested upon the lack of a savings event within the pertinent time period. *Id.*

**{¶30}** This court thus concluded that *w*hen the 2006 version was enacted, any mineral interest that was abandoned under the 1989 version stayed abandoned and stayed vested in the surface owner. *See Walker*, 7th Dist. No. 13NO402 at ¶ 41 (and once the mineral interest vested in the surface owner, it reunited with the surface estate). Here, we reiterate the *Walker* and *Shannon* holdings that the 1989 DMA can still be utilized for mineral interests that were deemed abandoned and vested thereunder.

**{¶31}** The trial court thus properly concluded that the 1989 DMA is still applicable to prior acts of abandonment. This leads to the question of what period is utilized to ascertain whether mineral rights were abandoned due to the lack of a savings event.

<u>FIXED OR ROLLING LOOK-BACK PERIOD</u>

**{¶32}** The mineral holders argue that the trial court erroneously utilized a rolling look-back period. That is, the trial court proceeded under the premise that the 1989 DMA applies for all years until the current DMA was enacted on June 30, 2006 and that any day until then can be used to commence the twenty-year look-back period. The trial court looked back twenty years from June 30, 2006 and found no savings events. The mineral holders urge that the look-back is fixed at twenty years from the March 22, 1989 date of enactment (with a grace period giving three extra years to perform a savings event if one did not exist in the pertinent time frame). As this mineral reservation was first created by a 1980 deed, there would be no abandonment under the 1989 DMA if a fixed look-back period is employed.

**{¶33}** As the mineral holders point out, the 1989 DMA states that there must be a savings event "within the preceding twenty years" without immediately specifying within the preceding twenty years of what. They point out that various trial courts and the Fifth District have looked back twenty years from the date of

enactment. *See, e.g., Riddel v. Layman*, 5th Dist. No. 94CA114 (July 10, 1995) ("Finally, the title transaction must have occurred within the preceding twenty years from the enactment of the statute, which occurred on March 22, 1989. Appellee Layman recorded the deed on June 12, 1973, well within the preceding twenty years from the date the statute was enacted.").

{¶34} The surface owners respond that the 1989 DMA was in effect from March 22, 1989 until June 30, 2006 (when the new version changed future look-back periods to twenty years immediately preceding the date on which the newly-created notice of abandonment is served or published). The surface owners urge that there is a rolling twenty-year look-back period under the 1989 statute, meaning that the surface owner can pick any date that exists between March 22, 1989 and June 30, 2006 and then look back twenty years from that date (with the grace period applying in the three years after enactment).

{¶35} The surface owners note that the legislature did not specifically state, "twenty years from the date of the enactment." They also point to division (D)(1), which states: "A mineral interest may be preserved indefinitely from being deemed abandoned under division (B)(1) by the occurrence of any of the circumstances described in division (B)(1)(c) of this section, including but not limited to, successive filings of claims to preserve mineral interests under division (C) of this section." R.C. 5301.56(D)(1). They reason that if a single savings event between March 22, 1969 and March 22, 1989 (1992 with the grace period) is sufficient, there would be no need for the successive filing of claims to preserve.

{¶36} The surface owners state that the *Riddel* case found abandonment under the first available twenty-year look-back period and thus had no need to review other twenty-year periods. *See Riddel*, 5th Dist. No. 94CA114 (original reservation by 1965 deed was a title transaction, and it was recorded in 1973 so it was a savings event). (The surface owners also resort to items outside of that decision to contend that a later claim to preserve in *Riddel* made the evaluation of other periods unnecessary).

{¶37} The surface owners claim that the mineral holders' argument should not be adopted as it renders the former DMA a "dead letter law." They urge that the instruction in R.C. 5301.55 to liberally construe the statute to simplify and facilitate land transactions would be complied with only by utilizing a rolling look-back period. They also compare the DMA to the Ohio Marketable Title Act and state that such act is not applied in a way that only the 40 years before enactment is viewed.

{¶38} As to the latter argument, the OMTA has language which specifically identifies the point of look-back. For instance, "A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years *at the time the marketability is to be determined*, which said conveyance or other title transaction purports to create such interest * * *." (Emphasis added). R.C. 5301.48. *See also* R.C. 5301.47(E); R.C. 5301.51(A) ("during the forty-year period immediately following the effective date of the root of title * * *").

{¶39} Ohio's 1989 DMA, however, merely states that the interest is deemed abandoned if none of the savings events occurred within the preceding twenty years. The question is: within the preceding twenty years of what? The surface owners' answer to this question is: the preceding twenty years of every single day after the statute's enactment (until the new statute was enacted). However, this court recently ruled that the look-back period in the 1989 DMA is fixed. *Eisenbarth v. Reusser*, 7th Dist. No. 13MO10, 2014-Ohio-3792. We adopt that holding here.

{¶40} The version of the Dormant Mineral Act being utilized herein was enacted on March 22, 1989. It provides that a mineral interest held by anyone other than the surface owner shall be deemed abandoned and vested in the surface owner unless certain listed circumstances exist, one of which is: "[w]ithin the preceding twenty years * * * the mineral interest has been the subject of a title transaction" that has been filed in the county recorder's office. R.C. 5301.56(B)(1)(c)(i). Division (B)(2) goes on to state that a mineral interest shall not be deemed abandoned under (B)(1) due to the lack of applicable circumstances until three years from the effective date of this section. R.C. 5301.56(B)(2).

**{¶41}** The statute does not elucidate that a savings event must occur within twenty years of the last savings event. *Eisenbarth*, 7th Dist. No. 13MO10 at ¶45. If the legislature intended that a savings event occurring in the original look-back period would last only for twenty years (i.e. a rolling look-back), they did not clearly state this. *Id.*

**{¶42}** As to any query of why the legislature would enact a "dead letter law," the point of the 1989 DMA may have been merely to give three years to eliminate or refresh stale mineral claims in the original look-back period, and the legislature planned to enact a new version for the next twenty-year period if public policy reasons for abandonment still applied in the future. *See id.* at ¶ 50. In fact, the legislature did then enact the 2006 DMA within twenty years of the former DMA, adding a new look-back period (twenty years from the service of notice). *Id.*

**{¶43}** As to R.C. 5301.56(D)(1) and its mention of successive claims to preserve and indefinite preservation, we stated that this did not alter our conclusion. It was noted that this could merely be a reference to any preservations that were filed under the OMTA as it existed prior to the 1989 DMA in order to show that a new claim to preserve can still be filed if the old one was filed outside of the new twenty-year look-back. *Id.* at ¶ 49. We stated that other statutory language connected the twenty-year look-back period to the date of enactment as (B)(2)'s grace period provides three years *from the date of enactment* before items will be deemed abandoned. R.C. 5301.56(B)(2). *Id.*

**{¶44}** We found that a mineral holder would read the statute at the time of enactment and conclude that they were safe due to a savings event in the pertinent period without having any statutory notice that they had to keep creating savings event twenty years from the last event, which could occur a mere few years after the statute's enactment. *Id.* at ¶ 47-48. We concluded that use of the words "preceding twenty years," without stating the preceding twenty years of what, did not create a rolling look-back period. *Id.* at 48.

**{¶45}** Notably, Indiana's DMA discusses abandonment of a mineral interest "if unused for a period of twenty years" (and "use" is defined with the various savings

events). Ohio's OVI statutory look-back period, for instance, states, "within twenty years of the offense." Ohio's 2006 DMA states within twenty years immediately preceding the date of which notice is served or published. In those examples, the period of look back is expressly set forth.

{¶46} Here, it is not expressed except in terms of "preceding twenty years" and then a grace period is provided for further chances to save. This led us to conclude that only a fixed look-back period could be employed. *Id.* at ¶ 45, 49 (also noting that forfeitures are abhorred in the law), *citing State ex rel. Falke v. Montgomery Cty. Resid. Dev., Inc.*, 40 Ohio St.3d 71, 73, 531 N.E.2d 688 (1988).

{¶47} As there is a fixed look-back period, there was no abandonment under the 1989 DMA because the mineral rights were not even severed until 1980. The trial court's decision finding the mineral interests were abandoned under the 1989 DMA is therefore reversed.

<u>SURFACE TRANSFER IS NOT A TITLE TRANSACTION</u>

{¶48} The mineral holders briefly argue that the 1988 recorded deed transferring the surface from the original grantees to the Farnsworths was a savings event because it repeated the prior mineral reservation and included the specific volume and page number in the recorder's records. The surface owners respond that the mineral rights owned by Veronica Burkhart and inherited by the Burkhart family were not the subject of the surface transfer, citing *Dodd* for the holding that a reference to a prior severance of the minerals is not a savings event

{¶49} The question is whether "[t]he mineral interest has been the subject of title transaction that has been filed or recorded" in the local recorder's office. R.C. 5301.56(B)(1)(c)(i). The surface deed is clearly a title transaction. *See* R.C. 5301.47(F) (a title transaction is any transaction affecting title to any interest in land such as a deed). It was recorded in the recorder's offense within the period employed by the trial court.

{¶50} As we concluded that the look-back period was fixed and there was no abandonment under the 1989 DMA, this alternative issue (raised in case a rolling look back was applied) is moot. Still, we point out that this issue would be governed

by our decision in *Dodd*, released two days before appellants filed their brief in this case. In *Dodd*, we held that the mineral interest is not the "subject of" a title transaction involving the surface merely due to the repetition of a prior reservation. *Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257 (disagreeing with the trial court's conclusion that a surface transfer referencing a prior reservation was a savings event). We applied the common definition of the phrase "subject of" as: "topic of interest, primary theme or basis for action." *Id.* at ¶ 48. We found that the primary purpose of the title transaction was to sell the surface rights rather than to affect the mineral interests. *Id.* Thus, repetition of a prior reservation in a surface transfer is not a savings event. *Id. See also Walker*, 7th Dist. No. 13NO402 at ¶ 27-28. This argument would thus be disposed of by *Dodd*.

CONSTITUTIONALITY OF 1989 DMA

{¶51} The mineral holders' final argument regarding the 1989 DMA is that it results in an unconstitutional taking without due process as it does not have the notice provided for in the 2006 DMA. The surface owners point out that the mineral holders fail to discuss the *Texaco* case, wherein the United State Supreme Court held that Indiana's DMA was not unconstitutional.

{¶52} This constitutional argument need not be addressed as the mineral holders set it forth in the alternative in case we ruled against them above. In any event, as the surface owners point out, the mineral holders did not argue below that the 1989 DMA was unconstitutional. It is not mentioned in their answer, in their summary judgment motion, or in their response to the surface owners' summary judgment motion.

{¶53} This court has ruled that it will not address constitutionality of the 1989 DMA where it had not been raised below. *See Walker*, 7th Dist. No. 13NO402 at ¶ 54-58. *See also Swartz*, 7th Dist. Nos. 13JE24, 13JE25 at ¶ 43, citing *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 598, 653 N.E.2d 646 (1995); *Abraham v. National City Bank Corp.*, 50 Ohio St.3d 175, 176, fn. 1, 553 N.E.2d 619 (1990). In accordance, arguments concerning the constitutionality of the 1989 DMA have been waived.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶54} The trial court's decision finding abandonment under the 1989 DMA is being reversed. However, the trial court also determined that, even if there was no abandonment under the 1989 DMA, the mineral interests were later abandoned under 2006 DMA as well. On this holding, the mineral holders' second assignment of error provides:

{¶55} "The Trial Court also erred in applying the 2006 version of the Dormant Mineral Act since there was a title transaction within the 20 year period prior to notice being served as a result of the application, issuance and subsequent recording of a certificate of transfer conveying the mineral interest and/or recording of a Claim to Preserve Mineral Interest."

{¶56} The 2006 DMA changes the twenty-year look-back period by stating that a mineral interest is deemed abandoned if none of the savings events have occurred "[w]ithin the twenty years immediately preceding the date on which notice is served or published under division (E) * * *." R.C. 5301.56(B)(3). The 2006 DMA eliminated the self-executing feature of the prior act by adding: "Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface shall" do two things. R.C. 5301.56(E). *See also* R.C. 5301.56(B) (deemed abandoned and vested in the surface owner if no savings events and if the requirements of (E) were established); R.C. 5301.56(H)(2) (if no timely claim to preserve or affidavit identifying a savings event is filed, the surface owner shall cause the recorder to record a memorialization of the abandonment at which time "the mineral interest shall vest in the owner of the surface").

{¶57} First, the surface owner must serve notice of intent to declare the mineral interest abandoned. This notice must be served by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address. If service of the notice cannot be completed to any holder, service can be completed by publication. R.C. 5301.56(E)(1). Then, at least thirty but not later than sixty days after the date on which the required notice is served or

published, the surface owner must file in the recorder's office an affidavit of abandonment. R.C. 5301.56(E)(2).

{¶58} If a mineral holder claims that the mineral interest has not been abandoned, then the holder shall file one of two documents in the recorder's office not later than sixty days after the notice was served or published. R.C. 5301.56(H)(1). The mineral holder can file a claim to preserve the mineral interest in accordance with division (C), or the mineral holder can file an affidavit that identifies an event described in (B)(3) that has occurred within the twenty years immediately preceding the date on which the notice was served or published. R.C. 5301.56(H)(1)(a)-(b).

{¶59} If the mineral holder fails to file a timely claim to preserve or a timely affidavit identifying a savings event within the twenty years immediately preceding the date of service or publication of notice, then the surface owner shall have recorded as memorialization of the abandonment, at which time the mineral interest shall vest. R.C. 5301.56(H)(2). Appellants set forth multiple arguments as to why they did not abandon their minerals rights under the 2006 DMA.

CLAIM TO PRESERVE

{¶60} In *Dodd*, this court held that a timely claim to preserve under R.C. 5301.56(H)(1)(a) stops the abandonment process provided in the 2006 DMA. *Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257, ¶ 24-35 (explaining that the claim to preserve under (H)(1) is not subject to a twenty-year look-back period but rather merely must be filed within sixty days of the notice). Thus, even if no savings event occurred in the twenty years immediately preceding the date of service or publication of the notice, the mineral holders can still protect their mineral interest by recording a timely claim to preserve. *Id.*

{¶61} The surface owners served notice of abandonment on the various mineral holders on various dates: February 24, 25, 27, and March 1, 2012. The mineral holders claim to preserve was recorded on April 19, 2012. There is no dispute that the mineral holders filed a timely post-notice claim to preserve the

mineral interest. *See* R.C. 5301.56(H)(1) ("not later than sixty days after the date on which the notice was served * * *.")

{¶62} The trial court determined that a post-notice claim to preserve merely existed in the statute to force the surface owner to litigate the matter of whether there existed a savings event. Our *Dodd* case then ruled that a timely claim to preserve filed under R.C. 5301.56(H)(1)(a) prevents abandonment itself. It was released on September 23, 2013, two days before the mineral holders filed their appellants' brief in this case.

{¶63} The surface owners recognize the applicability of our *Dodd* ruling to the claim to preserve in this case. *See* Appellees' Brief at 23. They ask that we refrain from applying *Dodd* because the mineral holders' initial brief did not raise the issue as an assignment of error. *See* Appellees' Brief at 22. However, we conclude that applying *Dodd* here is not unfair to appellees.

{¶64} The mineral holders' motion for summary judgment set forth an argument regarding the effect of their claim to preserve. For instance, they stated, "The statute is designed to permit a mineral owner to preserve their interest by responding in order to avoid abandonment." Defendants' Motion for Summary Judgment at 15. They also emphasized that they filed a timely claim to preserve their mineral interest after they were served with the notice "thus further preserving their mineral interest." Defendants' Motion for Summary Judgment at 4, 16. Moreover, the trial court specifically ruled "a claim to preserve cannot be the basis for establishing that the mineral interest cannot be abandoned." (July 16, 2013 J.E. at 11).

{¶65} Appellants' brief stated that their claim to preserve preserved their rights to the minerals. Appellants' Brief at 18-19 (while arguing against the affidavit of abandonment). In addition, the conclusion section of appellants' brief stated, "Appellants' subsequent recording of the Claims to Preserve Mineral Interest maintained their ownership of the minerals."

{¶66} Appellees' brief cited to this court's brand new holding in *Dodd.* The reply brief then pointed to our *Dodd* holding regarding a timely claim to preserve and

clearly urged that that the timely claim to preserve was sufficient to prevent abandonment under the 2006 DMA. *See* Appellants' Reply Brief at 8. Finally, our *Dodd* case was released two days before appellants filed their brief.

**{¶67}** For all of these reasons, we cannot conclude that an argument under *Dodd* was waived by not fully asserting it until the reply brief. We conclude that the surface owners' timely claim to preserve under R.C. 5301.56(H)(1) prevented abandonment under the 2006 DMA.[1]

**{¶68}** Accordingly, the judgment of the trial court is reversed, and judgment is entered that the mineral interest was not abandoned by the mineral holders.

Waite, J., concurs.
DeGenaro, P.J., concurs in judgment with concurring in judgment only opinion.

DeGenaro, P.J., concurring in judgment only with concurring in judgment only opinion.

**{¶69}** I agree with the majority that pursuant to this court's decision in *Dodd v. Croskey*, the 1988 deed does not constitute a title transaction and thus is not a savings event under R.C. 5301.56, Ohio's Dormant Mineral Act (ODMA). *See Dodd v. Croskey*, 7th Dist. No. 12 HA 6, 2013-Ohio-4257, *discretionary appeal accepted by*, 138 Ohio St.3d 1432, 2014-Ohio-889, 4 N.E.3d 1050. But I disagree with the majority and the recent trilogy holding that the 1989 ODMA controls resolution of this case and cases filed after the effective date of the 2006 ODMA: *Walker v. Shondrick–Nau,* 7th Dist. No. 13 NO 402, 2014-Ohio-1499 (Apr. 3, 2014) (fka *Walker v. Noon*);

---

[1]Due to this holding, we need not address alternative issues raised with the trial court's finding of abandonment under the 2006 DMA. For instance, the mineral holders argue that their application for a certificate of transfer filed in the probate court and/or the probate court's issuance of the certificate of transfer are savings events even though they were not filed in the recorder's office until after the initial notice of abandonment. And, two of the mineral holders complain that they recorded the certificate of transfer in the recorder's office before the surface owner's notice of abandonment was served on them (although the notice had already been served on other mineral holders). It is also argued that the signing of a certified mailing by the surviving spouse of one of the mineral holders did not constitute service where the notice named the deceased mineral holder.

*Swartz v. Householder,* 7th Dist. Nos. 13 JE 24, 13 JE 25, 2014-Ohio-2359, --- N.E.3d --- (June 2, 2014); and *Eisenbarth v. Reusser,* 7th Dist. No. 13MO10, 2014-Ohio-3792 (Aug. 28, 2014).

**{¶70}** Consistent with the analysis in the minority opinion in *Eisenbarth* (DeGenaro, P.J. concurring in judgment only), the 2006 ODMA should control resolution of disputes over severed mineral rights where, as in this case: a) the mineral rights were severed and the surface owner's fee interest was acquired before or during the time frame when the 1989 ODMA was in effect; and b) the surface owner did not claim the mineral rights were abandoned until after the effective date of the 2006 ODMA. Because the Burkharts timely recorded a claim to preserve pursuant to R.C. 5301.56(H), they continue to hold the severed mineral rights. As this is the same resolution reached by the majority, I respectfully concur in judgment only.

**{¶71}** Although first and foremost I disagree with the majority's decision that the 1989 ODMA governs here, secondarily I believe their analysis of the 1989 ODMA is itself flawed by concluding that the Burkharts were able to preserve their mineral interest pursuant to the 2006 ODMA. Operating under the rationale that the 1989 ODMA controls and is an automatic, self-executing statute, the Burkharts were no longer the holders of the severed mineral interest when they recorded the certificate of transfer and a claim to preserve pursuant to the 2006 ODMA in 2012. The mineral rights had automatically reverted and vested in the Farnsworths' predecessors in interest in 2000 by operation of the 1989 ODMA. Said differently, the Burkharts were no longer holders of mineral rights that could be transferred or preserved as of 2012, because the severed interest had been reunited with the surface fee in 2000. Thus, title to the mineral rights should be quieted in the Farnsworths.

### Nature of Interest, Forfeiture, Vesting and Laches

**{¶72}** Prior to the enactment of R.C. 5301.56 severed mineral rights were governed by Ohio common law. *Eisenbarth* at ¶79. (DeGenaro, P.J. concurring in judgment only). Generally, statutes in derogation of common law are strictly construed; specifically, statutes imposing restrictions in derogation of private property rights must be construed to avoid forfeiture, which is not favored in the law, and

cannot be ordered absent clear statutory expression. *Id.* at ¶80. (DeGenaro, P.J. concurring in judgment only).

{¶73} A fee simple interest —which includes severed mineral rights— under common law "cannot be extinguished or abandoned by nonuse, and it is not necessary to rerecord or to maintain current property records in order to preserve an ownership interest in minerals."[2] "An individual's vested right —created by common law or statute— has been generally defined by the Ohio Supreme Court as being in essence a property right, which is to be recognized and protected by the state from arbitrary deprivation; a vested right is more than a mere expectation or interest in the continuity of current common or statutory law; because it completely and definitely belongs to the individual it cannot be impaired or divested absent the individual's consent. The legal weight a vested right carries is reinforced by the axiom ingrained in Ohio common law that forfeiture is not favored in law or in equity." (Internal citations omitted) *Eisenbarth* at ¶78. (DeGenaro, P.J. concurring in judgment only).

{¶74} Consistent with principles of vesting, forfeiture and laches, the 1989 ODMA defined the surface fee owner's interest in the severed mineral rights as an inchoate right; by use of the term deemed, R.C. 5301.56 created the possibility of allowable vesting to occur, not an automatically vested right. *Id.* at ¶81-85, 90-91 (DeGenaro, P.J. concurring in judgment only).

{¶75} The ODMA is a remedial rather than a substantive statute because its purpose is to set forth the judicial process to follow when ownership of a severed mineral right is disputed; R.C. 5301.56 delineates the parameters to determine whether or not a severed mineral interest has been abandoned and if so, how to reunite it with the surface fee, and is to be applied prospectively to any case filed after each version's respective effective date. *Id.* at ¶86-89 (DeGenaro, P.J. concurring in judgment only). To construe the 1989 ODMA as controlling and an automatic self-executing statute has resulted in a retroactive, substantive deprivation

---

[2]*Dahlgren v. Brown Farm Props., LLC.,* Carroll C.P. No. 2013 CVH 274455, *8, quoting the Prefatory Note of the Uniform Dormant Interests Act, approved by the National Conference of Commissioners on Uniform State Laws in 1986, approved by the A.B.A. on February 16, 1987.

of the Burkharts' common law vested interest in the severed mineral rights. *Id.* at ¶87, 92-97, 110-111 (DeGenaro, P.J. concurring in judgment only). Inherent in the automatic, self-executing character ascribed to the 1989 ODMA is that it operates as a forfeiture, which the law abhors. *Id.* (DeGenaro, P.J. concurring in judgment only).

**{¶76}** The look-back period provision of the ODMA should not be confused with the analytical principle of retroactivity. Applying the look back provision of the ODMA version in effect at the time ownership of the severed interest is being litigated in a particular case contemplates resolving a factual question. Determining which ODMA version controls in a particular case contemplates determining through which lens those facts are viewed. When R.C. 5301.56 is given the proper remedial interpretation, there is no issue of retroactive versus prospective application and the propriety thereof. But where, as here, a substantive interpretation is given to the ODMA, applying it retroactively runs afoul of Ohio law in that regard.

**{¶77}** Finally, and conceding the doctrine of laches was not raised, nonetheless it bears consideration here as in *Eisenbarth.* The Farnsworths, who took title to the surface fee in 1988, failed to avail themselves of the 1989 ODMA while it was still in effect. An action to quiet title could have been filed in 2000 when the mineral rights arguably automatically reverted to them by operation of the statute. Instead, it wasn't until after the 2006 ODMA went into effect, that the Farnsworths published a notice of abandonment in February, 2012 *pursuant to the 2006 ODMA —* in response to which the Burkharts timely filed a claim to preserve— and then filed a quiet title action later that year, a lapse of 12 years. The prejudice to the Burkharts is evident. Logic dictates that if the holder can be divested of their severed mineral rights as having been abandoned due to their inaction under the 1989 ODMA, then the 2006 ODMA can similarly be used to preclude reuniting the interest with the surface fee because of the surface owner's inaction, i.e., his failure to commence a quiet title action while the 1989 ODMA was still in effect. *Id.* at ¶91 (DeGenaro, P.J. concurring in judgment only).

**Indiana Lapsed Mineral Act and *Texaco v. Short***

**{¶78}** The majority reaffirms this district's trilogy of decisions that the 1989 ODMA is a self-executing statute akin to Indiana's Mineral Lapse Act as so characterized by the U.S. Supreme Court decision in *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). I disagree with the reliance on *Texaco*. Ohio more vigorously protects its citizens' private property rights by statute than Indiana does; thus, neither *Texaco* nor the Indiana statute have persuasive or precedential value.

**{¶79}** First turning to two elemental points, the constitutionality of Indiana's statute was at issue in *Texaco*, whereas the constitutionality of the 1989 ODMA is not at issue here or in the preceding trilogy of cases, further undermining the persuasive value of *Texaco*. On this basis alone *Texaco* is distinguishable. Second, it appears that Indiana's Act remains unchanged with respect to its notice provisions, and presumably because the *Texaco* majority held the Act did not violate federal constitutional principles (affirming the Indiana Supreme Court's decision in *Short v. Texaco, Inc.,* 273 Ind. 518, 406 N.E.2d 626 (1980) that a self-executing statutory abandonment is constitutionally enforceable). Conversely, the Ohio General Assembly, recognizing the inoperability of the 1989 ODMA, seized the opportunity to clarify its intent and correct R.C. 5301.56, which can be construed as statutorily rejecting *Texaco*. *Id.* at ¶102 (DeGenaro, P.J., concurring in judgment only).

**{¶80}** Substantively, the language of the Indiana Act is unequivocal, and lends itself to an interpretation that vesting is automatic. Ind.Code 32-23-10-2 provides: "An interest in coal, oil and gas, and other minerals, if unused for a period of twenty (20) years, *is extinguished and the ownership reverts* to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved. However, if a statement of claim is filed in accordance with this chapter, the reversion does not occur." (Emphasis added.) *Id.* As discussed in *Eisenbarth*, this language is consistent with other portions of the OMTA which uses terms such as 'null and void' or 'extinguished' and arguably warrants an automatic characterization, unlike the qualified phrase in R.C. 5301.56 'deemed abandoned and vested,' which should

not be construed as having similar automatic effect. *Id.* at ¶85, 94 and 100 (DeGenaro, P.J. concurring in judgment only).

{¶81} R.C. 5301.56 was amended to clarify when a mineral interest became abandoned and delineate the exact process to reunite the severed mineral interest with the surface fee. Central to the modifications in the 2006 ODMA is that in all instances *before any allowable vesting can occur*, the surface owner must notify the holder of the severed mineral rights of the owner's intention to declare the rights abandoned, even in the absence of a saving event within the now clearly defined look-back period, in order to afford the holder one final opportunity to preserve their mineral rights from abandonment. R.C. 5301.56(E)(2) and (G). Thus, the Ohio General Assembly's amendments to R.C. 5301.56 have afforded the holder 60 days to, in essence, revive their mineral interest. This is the antithesis of a self-executing statute. Moreover, that the 1989 ODMA was not, nor intended to be, self-executing is evident from the testimony of the 2006 ODMA sponsor and the Legislative Services final bill analysis, discussed in *Eisenbarth* at ¶108-115 (DeGenaro, P.J. concurring in judgment only). This vigorous statutory protection stands in stark contrast with Indiana's Act.

{¶82} The 2006 ODMA removed the ambiguity and potentially arbitrary operation of the 1989 ODMA by clearly defining the triggering event to commence a 20 year look-back period, and requiring notice to the mineral rights holder before seeking abandonment, including enabling the holder to revive a possibly abandoned interest. R.C. 5301.56(H). As a result, the General Assembly's express purposes of: (1) requiring recording all interests to facilitate a searchable chain of title in real property in general, and mineral rights specifically; and (2) encouraging economic mineral production without violating inalienable property rights were achieved.

{¶83} Here, the majority's interpretation of the 1989 ODMA as an automatic self-executing statute has created a forfeiture of what were heretofore private property rights protected at common law from extinguishment by abandonment or nonuse; under the common law, affirmative action was required by the mineral rights holder before they could be divested of their interest. This is in direct contravention

of the General Assembly's express decision to give Ohio citizens more statutory protection than the Indiana Legislature affords its citizens. *Eisenbarth* at ¶1021 (DeGenaro, P.J. concurring in judgment only).

### 2006 ODMA Governs Resolution of Severed Mineral Rights Disputes

{¶84} Consistent with the analysis in the minority opinion in *Eisenbarth*, the majority has misinterpreted the 1989 ODMA in addition to giving it effect despite the General Assembly's enactment of the 2006 ODMA. Where litigation to resolve disputes between the surface fee owner and the severed mineral rights holder was filed after the 2006 ODMA took effect, the 2006 version controls; the 1989 version has no force or effect. This conclusion is consistent with reading the OMTA and the ODMA in pari materia, and more importantly, with the General Assembly's express intent in enacting the 2006 ODMA and the statute's clear unambiguous language. *Eisenbarth* at ¶104-118 (DeGenaro, P.J. concurring in judgment only).

{¶85} To interpret the 1989 ODMA as automatic and self-executing would confound the purpose of the OMTA, as well as the ODMA: to engender reliance upon publicly recorded documents rather than private ones for transactions affecting title to real property, such as ownership of severed mineral rights. Nothing in either version of the ODMA suggests that it should not be construed in pari materia with the OMTA. Notice remains the watchword of the entire OMTA, an omission in the 1989 ODMA that was corrected by the General Assembly in the 2006 ODMA. R.C. 1.51 dictates that a special provision should be construed with a more general provision, if possible, to give effect to both. As part of the general OMTA statutory scheme, the ODMA can be read as defining the surface owner's interest in the severed mineral rights as an inchoate right and still give effect to its specific provisions and purpose within the global purposes of the OMTA as well. *Eisenbarth* at ¶85, 94, 104-107 (DeGenaro, P.J. concurring in judgment only).

{¶86} The ambiguity of the 1989 version of the ODMA is readily apparent. Courts are guided by canons of statutory construction when asked to construe ambiguous statutory language in order to decipher legislative intent. But given the unique procedural circumstances presented in this and the related trilogy of cases,

namely, construing an ambiguous statute after it has been amended to remove the ambiguity, we need not resort to those canons in order to glean that intent. By virtue of the 2006 ODMA, we have the rare benefit of the General Assembly's statement of its intent with respect to the ambiguous language of the 1989 ODMA. That alone dictates that the 1989 version is no longer controlling; to decide otherwise makes the enactment of the 2006 ODMA meaningless. *Eisenbarth* at ¶67 (DeGenaro, P.J. concurring in judgment only).

{¶87} Viewed from the perspective that the 2006 ODMA is in effect, along with the General Assembly's expressed reasons for making the amendments in that version, and that statutes in derogation of common law must be strictly construed to preserve individual property rights, the phrase 'deemed abandoned and vested' in R.C. 5301.56(B)(1), should be construed as defining an inchoate right. *Eisenbarth* at ¶69 (DeGenaro, P.J. concurring in judgment only).

{¶88} The 2006 version of R.C. 5301.56 does what the General Assembly intended the 1989 ODMA to do but failed to achieve: balance the complimentary policy goals of creating a reliable record chain of title via the Ohio Marketable Title Act (OMTA) statutory scheme —which includes the ODMA— and facilitate economic use of mineral rights. The Ohio General Assembly recognized that the 1989 ODMA had technical problems and was thus seldom used. Specifically, the 1989 ODMA failed to define how to calculate the 20 year look-back period before allowable vesting can occur —to use the General Assembly's verbiage— and define the process to reunite the interests in the surface owner. The 2006 ODMA corrected inoperable, not merely ambiguous, statutory language. The current version of R.C. 5301.56 not only clarifies the process, it specifies the look-back period trigger and mandates notice to the holder before the mineral rights are deemed abandoned; only then can allowable vesting occur with the surface owner. *Eisenbarth* at ¶70 (DeGenaro, P.J. concurring in judgment only).

{¶89} Given the Ohio General Assembly's expressed purpose of the 2006 ODMA and the clear, unambiguous language of its modifications, the majority incorrectly continues to follow the recent trilogy of cases from this district, and

determine the parties' interests to the severed mineral rights pursuant to the 1989 ODMA. As the Burkharts timely recorded a claim to preserve the severed mineral rights under the 2006 ODMA, R.C. 5301.56(H), they continue to hold that interest. Thus, I concur in the ultimate conclusion that the Burkharts did not abandon their mineral rights and would reverse the trial court, but do so pursuant to the 2006 ODMA. *Eisenbarth* at ¶118 (DeGenaro, P.J. concurring in judgment only).

## Alternative 1989 ODMA Analysis

{¶90} Assuming arguendo the 1989 ODMA controls, in construing the meaning of the ambiguous phrase 'preceding 20 years,' I disagree with the parties' and the majority's characterization of the look-back period as either rolling or fixed. The provision in R.C. 5301.56(D)(1) delineating the process for preserving severed mineral rights for successive terms signals the General Assembly's intention that in order to preserve that interest, every 20 years a savings event must occur, or the holder must file a claim to preserve, in order to retain their interest for another 20 years. *Eisenbarth* at ¶122-124 (DeGenaro, P.J. concurring in judgment only). Moreover, the majority's substantive 1989 ODMA analysis is flawed.

{¶91} R.C. 5301.56(D)(1) provides that the holder of severed mineral rights can preserve their mineral rights indefinitely by filing successive claims for successive 20 year periods. R.C. 5301.56(B)(1)(c)(v), 1988 S 223, eff. 3-22-89 (a mineral interest will not be deemed abandoned if within the preceding 20 years a claim to preserve has been filed pursuant to division (C)(1) of the statute). Because R.C. 5302.56(D)(1) refers to successive filings, the 1989 ODMA contemplates that the holder of severed mineral rights was required to renew that interest of record every 20 years.

{¶92} Pursuant to the 1989 ODMA, the original severance of the mineral rights by Veronica Burkhart in 1980 was the subject of a title transaction contemplated by R.C. 5301.56(B)(1)(c)(i), and thus a savings event which preserved the mineral rights for the initial statutory 20 year period, which ran here until 2000. Veronica died in 1995. Thus, the Burkharts or their predecessor in interest, Veronica, was required, at a minimum, to record a successive claim to preserve before the

initial statutory 20 year period expired in 2000 to preserve their mineral rights for another 20 year period, which they failed to do.

**{¶93}** Applying the rationale that the 1989 ODMA is controlling and an automatic self-executing statute, neither the February, 2012, certificate of transfer purporting to transfer Veronica Burkhart's mineral interest to her heirs, nor the April, 2012, claim to preserve can constitute a savings event for the Burkharts because they were no longer the holders of mineral rights that could be transferred or preserved as of 2012. Those severed mineral rights automatically vested and reverted to the Farnsworths in 2000 by operation of the 1989 ODMA 12 years earlier. Both filings were recorded 32 years after the last savings event, well beyond the 20 year look-back period provided for in R.C. 5301.56. Only the 2006 ODMA provides a 60 day window for a mineral rights holder to preserve their interest where, as here, the holder has been notified that there has been a gap in excess of 20 years from a preceding savings event. *Id.* at ¶121 (DeGenaro, P.J. concurring in judgment only).

**{¶94}** Because the severed interest had been reunited with the surface fee in 2000 by operation of the 1989 ODMA, the majority has incorrectly concluded that the Burkharts preserved their mineral interest pursuant to the 2006 ODMA. Accordingly, title to the mineral rights should be quieted in the Farnsworths.

**Conclusion**

**{¶95}** In sum, while feigning to engage in statutory construction in order to decipher what the General Assembly meant by 'deemed abandoned and vested,' 'preceding 20 years' and 'successive' makes for interesting academic writing or a law school exam question, to do so here is disingenuous. The timing of the enactment of both versions of the ODMA has presented Ohio's judiciary with a rare opportunity; virtually every case involving the statute has been filed *after* the amendments to the ambiguous statute have been enacted. Instead of engaging in the typical exercise of divining legislative intent by reading the proverbial tea leaves, the General Assembly has provided us with a billboard of the meaning of these terms by virtue of sponsor testimony and Legislative Services' analysis of the 2006 ODMA, let alone the express statutory language of R.C. 5301.56 the General Assembly enacted.

**{¶96}** Yet the majority has chosen to ignore the existence of the 2006 ODMA and construe the 1989 ODMA in a vacuum. This defies logic and the canons of statutory construction, a cornerstone judicial interpretive tool created and followed to honor the principle of separation of power and balance the respective constitutionally defined roles of the legislative and judicial branches.